# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KEVIN FOLEY and**
**LAUREN BETH RAMOS-FOLEY,**                    Chapter 7
    Debtors                    Case No. 13-14529-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD R. LASSMAN, CHAPTER 7**
**TRUSTEE,**
    Plaintiff
v.                    Adv. P. No. 14-1139
**JAMES D. SHORT and**
**GLORIA D. SHORT,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

## I. INTRODUCTION

The matters before the Court are Cross-Motions for Summary Judgment with

respect to the Amended Complaint filed by Donald R. Lassman, the Chapter 7 Trustee of

the bankruptcy estate of Kevin Foley and Lauren Beth Ramos-Foley (the "Debtors")

against James D. Short and Gloria D. Short (collectively, the "Shorts").  James Short is

deceased, having passed away in April of 2013; his widow, Gloria Short ("Mrs. Short"),

appears in this adversary proceeding through her son, Walter Dean Short, who holds a General Power of Attorney.

The Court heard the Trustee's Motion for Summary Judgment on November 17, 2015, as well as the "Motion of Gloria D. Short, Defendant, for Order Authorizing the Court to Rule for Dismissal and Return Any and All Interest and or [sic] Property Rights in Real Property and Personal Property Known as the Cinderella Motel Back to Her Without Prejudice (Cinderella Motel, 65 Park Street, Gilbersville, Kentucky" (the "Motion to Dismiss").  In view of the acquiescence of Walter Dean Short ("Mr. Short") and the absence of an objection from the Trustee, the Court shall treat the Motion to Dismiss as a Cross-Motion for Summary Judgment.

The material facts necessary to resolve the Cross-Motions are not in dispute. Accordingly, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7056.

## II. FACTS

The Debtors filed a voluntary Chapter 7 petition on July 30, 2013.  On Schedule A-Real Property, they disclosed an interest in property located at "65 Park Street, Gilbersville, KY subject to a Contract for Deed 0-value unknown [sic]."  On amended Schedule B-Personal Property, they listed a liquidated debt owed to them as follows:

> Janine O'Brien and Christopher M. O'Brien. Debt obligation received by debtors in conjunction with a Contract for Sale of the Cinderella Motel, Gilbertsville, Ky. (March 2013)

The Debtors valued the Contract for Sale at $165,000.

On July 16, 2014, the Trustee commenced two adversary proceedings.  One against the Shorts and the other against Janine and Christopher O'Brien (collectively, the "O'Briens").  In his Amended Complaint against the Shorts, the Trustee set forth five counts as follows:  Count I (11 U.S.C. § 542 – Turnover); Count II (Unjust Enrichment); Count III (11 U.S.C. § 362 – Violation of the Automatic Stay); Count IV (Determination of Validity of Lien – Defective Mortgage under Massachusetts Law); and Count V (Determination of Validity of Lien – Defective Mortgage under Kentucky Law).  Pursuant to his Motion, the Trustee seeks summary judgment as to all counts.

The Cross-Motions for Summary Judgment concern the sale by the Shorts to the Debtors of their interest in real property located at 65 Park Street, Gilbertsville, Kentucky (the "Property"), namely the land and buildings located in Marshall County, Kentucky, together with the Debtors' interest in the inventory, equipment and personal property located on the Property which is known as the Cinderella Motel, and the subsequent Contract for Deed executed by the Debtors and the O'Briens.

In connection with the sale of the Property from the Shorts to the Debtors, the Shorts provided the Debtors with financing for their acquisition of the Property.  The Debtors, on March 1, 2007, in Benton, Kentucky, executed a promissory note (the "Note") in favor of the Shorts in the original principal amount of $168,000, with interest at the rate of 4.75% per annum.  The Note required equal monthly payments of $934; it was scheduled to mature on January 1, 2022.  In addition, the Shorts and the Debtors executed a Deed which reflected the following:

3

**"GRANTOR"**

<u>James D. Short</u> /s/        <u>Gloria D. Short</u> /s/
James D. Short           Gloria D. Short

**"GRANTEE"**
<u>Lauren B. Ramos</u> /s /       <u>Kevin M. Foley</u>
Kevin M. Foley by Lauren B. Ramos, his agent

The parties recited consideration of $180,000 in the deed. The Shorts' signatures were both notarized:  in the case of James D. Short, in Wise Virginia on March 28, 2007, and in the case of Gloria D. Short, in Marshall County, Kentucky on April 11, 2007.   The acknowledgment executed by James D. Short provided:   "[t]he foregoing Deed was subscribed, sworn to and acknowledged before me this the 28th day of March, 2007 by James D. Short, *Grantor*" (emphasis supplied). The acknowledgment of the Deed executed by Gloria D. Short provided: "[t]he foregoing Deed was subscribed, sworn to and acknowledged before me this the 10th [sic] day of April, 2007 by Gloria D. Short, *Grantee*." (emphasis supplied).   The Deed also contained an acknowledgment of a "Certificate of Consideration" which provided: "[t]he foregoing Certificate of Consideration was subscribed, sworn to and acknowledged before me this the 11th day of April, 2007 by Lauren B. Ramos, individually and as agent for Kevin M. Foley, Grantees."

The Debtors executed a Real Estate Mortgage in favor of the Shorts (the "Mortgage") to secure the Note.   The Mortgage was recorded in Marshall County, Kentucky on April 11, 2007.   The acknowledgement applicable to Lauren Beth Ramos, who was single at the time, provided the following:

4

STATE OF KENTUCKY
COUNTY OF MARSHALL

The foregoing Mortgage was acknowledged before me this the 11 day of
April, 2007, by Lauren Ramos, single.

<u>Illegible</u>   /s/
Notary Public

My Commission expires: 6-8-08

The acknowledgement applicable to Kevin Foley, who also was single at the time,

provided the following:

STATE OF MASSACHUSETTS [sic]
COUNTY OF PLYMOUTH

The foregoing Mortgage was acknowledged before me this the 5th day of
April, 2007, by Kevin M. Foley, single.

<u>David R. DeBastos</u> /s/
Notary Public

My Commission expires: March 10, 2011

The Mortgage was lodged in the Marshall County Court on April 11, 2007.  The Mortgage

sets forth the following Certification:

STATE OF KENTUCKY
COUNTY OF MARSHALL

I, Dan Duke Clerk of the County Court of said County, do certify that
the foregoing Mortgage was on the 11 day of April, 2007 at 4:20
o'clock P.M. lodged in my office of record.  Whereupon the same, the
foregoing and this certificate have been duly recorded in my office
in Mortgage Book 604, page 125
Given under my hand this the 12 day of April, 2007.

Dan Duke, Clerk
By Delia Riley, D.C.

The Mortgage provides that "[i]n the event Mortgagor sells, or contracts to sell the mortgaged property, or any part thereof, Mortgagee may without notice at its option declare the entire unpaid balance of the promissory note immediately due and payable." The Deed and the Mortgage both indicate that they were prepared by George E. Long II, an attorney with offices in Benton, Kentucky.

Approximately six years after the Debtors purchased the Property from the Shorts, the Debtors executed, on March 18, 2013, a "Contract for Deed" with the O'Briens for a purchase price of $195,000. The Contract required the O'Briens to pay the Debtors a total deposit of $30,000 and to pay the remaining $165,000 in equal monthly payments of $1,500 each over a ten-year period. The parties recognized the existence of the Mortgage in favor of the Shorts and the Debtors agreed to "be responsible and pay all outstanding liens against the property . . . [and] . . . "to take the necessary steps and make sufficient arrangements to pay these [lien] creditors in full." Upon completion of payments by the O'Briens, the parties agreed that "the Sellers [the Debtors] bind themselves, their heirs and assigns, to execute a General Warranty Deed conveying title in fee simple being a good and marketable title free and clear of any liens or encumbrances except those created by the Buyers."

In addition, the Contract for Deed provided remedies for non-payment as follows:

> It is understood and agreed by and between the parties, that the Buyers will have caused a material breach of this contract in the event the Buyers are in default by non-payment of any payment for a period of thirty-one (31) days from the date it is due and payable, . . . provided the Sellers shall first give the Buyers at least fifteen (15) days written notice of their intention to forfeit this Contract and shall set forth therein the specific breach of contract and of their intention to re-enter the premises and declare

this Contract in default, if such breach shall be continued.  If after expiration of fifteen (15) days provided the Buyers are then in default respecting the covenant or conditions complained of by the Sellers, then the Sellers may, at their option and without notice, cancel the contract and refuse to accept any further payment thereon, and treat the same paid up to the date of such default as liquidated damages for beach of contract. . .

In the alternative, the Sellers shall have the option to accelerate the entire unpaid principal and interest, claiming the same to be immediately due and payable and to enforce the terms and provisions of this contract. In addition to the balance due[,] the Sellers shall also be reimbursed for reasonable attorney's fees, court costs, any damages, unpaid taxes, insurance or other amounts that were to be paid to the Buyers.

Attorney George E. Long II prepared the Contract for Deed.

After the Debtors filed their Chapter 7 petition, the Shorts made demand upon the O'Briens to make the payments pursuant to the Note.  The O'Briens complied and, beginning in July, 2013, made monthly payments under the Note, totaling at least $15,997, directly to Mrs. Short.  Mrs. Short had notice of the commencement of the Debtors' Chapter 7 case and refused to turnover approximately $16,000 in funds received from the O'Briens to the Trustee.

In addition, on July 30, 2014, Walter Dean Short, under his General Power of Attorney, and the O'Briens executed a "General Promissory Agreement," pursuant to which the O'Briens, who reside at the Cinderella Motel, agreed to pay Mrs. Short $931 per month toward the Mortgage in exchange for the right to remain on the Property "during any and all foreclosure proceedings as long as monthly payments continue and remain current."

## III. DISCUSSION

### A. Summary Judgment Standard

This Court has set forth the standard for summary judgment in numerous decisions and it is well established in the First Circuit. In Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994), the United States Court of Appeals for the First Circuit stated:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi—evidentiary quality-say, affidavits or depositions—that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

Id. at 763 (1st Cir. 1994) (citations omitted, footnote omitted).[1] *See also* Patton Drive, LLC v. Fustolo (In re Fustolo), 537 B.R. 55, 61 (Bankr. D. Mass. 2015).

### B. Choice of Law

This Court must decide whether to apply Massachusetts law or Kentucky law to the question of the validity of the Mortgage held by Mrs. Short. Neither the Trustee nor Mrs. Short addressed the issue, and neither the Note nor the Mortgage contained a choice of law provision. As will be discussed more fully below, Kentucky law upholds the

---

[1] Fed. R. Civ. P. 56 was amended effective December 1, 2010. The summary judgment standard now appears in subsection (a) of Rule 56, rather than at subsection (c). The amended rule, however, does not change the standard for summary judgment. *See* Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 n. 4 (1st Cir. 2011).

validity of mortgages that are "lodged" or recorded even if there are defects in acknowledgments, where Massachusetts law does not.

"A federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state." *See* <u>Hanlin Group, Inc. v. Int'l Minerals & Chem. Corp.</u>, 759 F.Supp. 925, 929 n.3 (D. Me. 1990) (citing <u>Klaxon Co. v. Stentor Elec. Mfg., Co.</u>, 313 U.S. 487, 496, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941)).  *See also* <u>Adams v. Rubin</u>, 964 F.Supp. 507, 509 (D. Me. 1997).  Accordingly, this Court must apply Massachusetts choice of law rules.

In <u>F.D.I.C. v. Henry</u>, 818 F.Supp. 452 (D. Mass. 1993), the court set forth general rules applicable to choice of law questions in Massachusetts.  It stated:

> [R]eal property questions, including those concerning real estate foreclosures, are determined by the sovereign within whose territory the land is located (i.e., the law of the situs). *See* Restatement (Second) of Conflict of Laws §§ 228, 229, 254 (1971). Contractual issues, on the other hand, are generally determined by the law of the state where the contract is executed. See Restatement (Second) Conflict of Laws, §§ 186–188 (1971); *cf.* <u>Walling v. Cushman</u>, 238 Mass. 62, 65, 130 N.E. 175, 176 (1921) (law applicable to a note is the law of the place where the note is payable).

<u>F.D.I.C. v. Henry</u>, 818 F. Supp. at 454.  *See also* <u>Cosme v. Whitin Mach. Works, Inc.</u>, 417 Mass. 643, 646 (1994)(in product liability action, court used "functional approach" and assessed various choice-influencing considerations, including those provided in the Restatement (Second) of Conflict of Laws (1971), and those suggested by various commentators).

In view of the authorities cited above, the absence of argument as to application of Massachusetts or Kentucky law, this Court shall apply Kentucky law.  Not only is the Property located in Kentucky, the Mortgage was executed by Mrs. Ramos-Foley and

notarized in Kentucky, and the O'Briens reside in the Property in Kentucky. Moreover, the Restatement (Second) of Conflict of Laws (1971) supports application of Kentucky law.

    C. <u>Analysis</u>

        1. Counts IV and V

    The Court shall address the Trustee's Motion for Summary Judgment with respect to Counts IV and V first as they bear directly on the merits of his remaining counts.

    The Trustee contends that the Mortgage in favor of the Shorts is defective because the Debtors' acknowledgements are defective under both Massachusetts and Kentucky law. Surprisingly, the Trustee merely seeks a determination of the validity of the Mortgage. His Amended Complaint and Memorandum in support of his Motion for Summary Judgment make no mention of the Trustee's avoiding powers under 11 U.S.C. § 544(a), referred to as the "strong arm clause."[2] According to the Trustee, the

---

[2] In <u>Weiss v. Wells Fargo Bank, N.A. (In re Kelley)</u>, 498 B.R. 392, 397 (B.A.P. 1st Cir. 2013), the United States Bankruptcy Appellate Panel of the First Circuit observed:

> § 544(a) "gives a trustee various rights and powers, one of which is the power to avoid a transfer by the debtor of an unperfected security interest in real property to the same extent a bona fide purchaser could avoid the transfer, regardless of any actual knowledge of the trustee." <u>In re Nistad</u>, 2012 WL 272750, at *3 (citing 11 U.S.C. § 544(a)(3); <u>Me. Nat'l Bank v. Morse (In re Morse)</u>, 30 B.R. 52, 54 (1st Cir. BAP 1983)). "While a trustee's avoidance power is not subject to any actual knowledge he or she may possess, it is subject to constructive knowledge." <u>In re Nistad</u>, 2012 WL 272750 at *5. "The extent of the [t]rustee's avoidance powers are determined by state law." <u>Carrion v. USDA Rural Hous. Serv. (In re Roldan)</u>, Adv. No. 11–00094, 2012 WL 2221410, at *7 (Bankr. D. P.R. June 13, 2012) (citations omitted).

acknowledgement of Kevin Foley's signature does not reflect that the notary public

ascertained that his signature was voluntarily affixed and, thus, it contains a materially

defective acknowledgement, rendering it voidable under Massachusetts law. *See* Mass.

Gen. Laws ch. 183, §§ 29 and 30; *see* <u>Weiss v. Wells Fargo Bank, N.A. (In re Kelley)</u>, 498

B.R. 392 (1st Cir. BAP 2013); <u>Agin v. Mortg. Elec. Registration Sys., Inc. (In re Giroux)</u>,

2009 WL 1458173 (Bankr. D. Mass. 2009), *aff'd,* 2009 WL 3834002 (D. Mass. Nov. 17, 2009).

The Trustee also contends that the acknowledgement of Mrs. Ramos-Foley's

signature is defective under Ky. Rev. Stat. § 423.130.  He cites <u>Rogan v. Am.'s Wholesale

Lender (In re Vance)</u>, 99 F.App'x 25 (6th Cir. 2004), and <u>Select Portfolio Servs., Inc. v.

Burden (In re Trujillo),</u> 378 B.R. 526 (B.A.P. 6th Cir. 2009), in support of his position.  In

<u>In re Trujillo</u>, the court stated:

> The mortgage here was "lodged for record." The dispute is whether it was
> adequately "acknowledged . . . according to law" to put a subsequent bona
> fide purchaser on constructive notice. This is because, as noted in the Sixth
> Circuit's <u>Vance</u> opinion, Kentucky cases have consistently held that
> recorded but defectively acknowledged mortgages do not operate to
> provide constructive notice of a mortgage. <u>In re Vance</u>, 99 Fed.Appx. 25, 27,
> 2004 WL 771484 (6th Cir. 2004); *see also* <u>State Street Bank & Trust Co. v.
> Heck's Inc</u>., 963 S.W.2d 626 (Ky. 1998).

378 B.R. at 532. The court further explained:

> In <u>Vance</u>, the question was whether a defectively acknowledged but
> recorded mortgage could provide actual or inquiry notice to a bankruptcy
> trustee in the position of a subsequent purchaser for value. The certificate
> of acknowledgment in <u>Vance</u> failed to include the name of the county where
> the acknowledgment was taken, the date of the acknowledgment and the
> names or identity of those who signed the mortgage. On appeal, the district
> court agreed with the bankruptcy court that the mortgage was not properly
> acknowledged pursuant to Kentucky Revised Statute § 423.130 but, because

---

<u>In re Kelley</u>, 498 B.R. at 392 (footnote omitted).

it was recorded, the district court determined that the mortgage could give actual or inquiry notice under Kentucky law and reversed the bankruptcy court's decision. In re Vance, 99 Fed.Appx. at 26–27. The trustee appealed. Even though the creditor did not file a cross appeal regarding the defective certificate of acknowledgment, the court of appeals chose to address the issue. In re Vance, 99 Fed.Appx. at 27. After observing that the certificate of acknowledgment failed to include the name of the county where the acknowledgment was taken, the date of the acknowledgment, and the names or identity of those who signed the mortgage, the court set out the language of Kentucky Revised Statute § 423.130 which is titled, "Certificate of person taking acknowledgment" and provides: The person taking an acknowledgment shall certify that: (1) The person acknowledging appeared before him and acknowledged he executed the instrument; and (2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument. The court then opined, "[t]he notary failed to include this [§ 423.130] information in the certification. Therefore the district court was correct in finding that the acknowledgment failed to comport with Kentucky law." In re Vance, 99 Fed.Appx. at 27. The court turned to Kentucky Revised Statute § 382.270, and also agreed with the prior courts that the defectively acknowledged mortgage would not operate to give constructive notice to subsequent purchasers or creditors. It distinguished the trustee from other creditors and purchasers, such as those in the State Street Bank & Co. case, noting that 11 U.S.C. § 544(a)(3) expressly "precludes the trustee from having actual notice and/or knowledge" of events prior to the filing of the bankruptcy petition. Id. at 28. The court concluded that a bankruptcy trustee can only be charged with constructive notice. Id. Accordingly, the decision of the district court, charging the trustee with inquiry notice, was reversed.

In re Trujillo, 378 B.R. 526, 532-33 (B.A.P. 6th Cir. 2007). From the decisions in Vance and Trujillo, determination of the validity of the Mortgage hinges upon two provisions of Kentucky law. The first is Ky. Rev. St. § 423.130. It provides:

The person taking an acknowledgment shall certify that:

(1) The person acknowledging appeared before him and acknowledged he executed the instrument; and

> (2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

Ky. Rev. Stat. § 423.130.  Nevertheless, the second provision, section 382.270 of Kentucky

Revised Statutes, provides:

> No deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be lodged for record and, thus, valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law. However, if a deed or deed of trust or mortgage conveying a legal or equitable title to real property is not so acknowledged or proved according to law, but is or has been otherwise lodged for record, such deed or deed of trust or mortgage conveying a legal or equitable title to real property or creating a mortgage lien on real property shall be deemed to be validly lodged for record for purposes of KRS Chapter 382, and all interested parties shall be on constructive notice of the contents thereof. As used in this section "creditors" includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance.

Ky. Rev. St. § 382.270.  Section 382.270 has been amended several times.  The 1962 version

of the statute provided: "No deed or deed of trust or mortgage conveying a legal or

equitable title to real property shall be lodged for record and, thus, valid against a

purchaser for a valuable consideration, without notice thereof, or against creditors, until

such deed or mortgage is acknowledged or proved according to law." Ky. Rev. St.

§382.270 (1962). This version of the statute would explain the language in Vance, a 2004

case, where the United States Court of Appeals stated: "KRS 382.270 does nothing more

than reiterate the principle that a properly recorded and legally valid instrument

constitutes constructive notice to subsequent . . . creditors."(emphasis omitted). In re

Vance, 99 F.App'x at 28. The statute was amended in 2006. As set forth in Trujillo,

effective July 12, 2006, § 383.270 provided:

> No deed or deed of trust or mortgage conveying a legal or equitable title to real
> property shall be *lodged for record and, thus,* valid against a purchaser for a valuable
> consideration, without notice thereof, or against creditors, until such deed or
> mortgage is acknowledged or proved according to law and lodged for record.
> *However, if a deed or deed of trust or mortgage conveying a legal or equitable title to real
> property is not so acknowledged or proved according to law, but is or has been, prior to
> July 12, 2006, otherwise lodged for record, such deed or deed of trust or mortgage
> conveying a legal or equitable title to real property or creating a mortgage lien on real
> property shall be deemed to be validly lodged for record for purposes of KRS Chapter 382,
> and all interested parties shall be on constructive notice of the contents thereof.* As used
> in this section "creditors" includes all creditors irrespective of whether or not they
> have acquired a lien by legal or equitable proceedings or by voluntary conveyance.

In re Trujillo, 378 B.R. 537-38 (quoting Ky. Rev. St. § 382.270 (eff. 7–12–06)). *See* Rogan v.

New S. Fed. Sav. Bank (In re Pelfrey), 419 B.R. 10, (B.A.P 6th Cir. 2009)(interpreting the

2006 version of § 382.270). [3]   The actual version of the statute set forth in 2006 Kentucky

---

[3] In In re Pelfrey, the court considered the amendment to § 383.270 and observed:

> [T]he bankruptcy petition in this case was filed well after the effective date
> of the amendments to the statute at issue. In the present case, the trustee's
> rights vested on August 11, 2008 when Pelfrey filed his petition and
> therefore the application of Ky. Rev. Stat. Ann. § 382.270, as amended, is
> appropriate. The trustee asserts that "the amendment did not dispense
> with the requirement that a mortgage executed after July 12, 2006, must
> contain a valid acknowledgment in order to be recorded. The July 12, 2006
> amendment granted amnesty to lenders whose mortgages were
> challenged by bankruptcy trustees under Kentucky case law as bona fide
> purchasers pursuant to In re Vance, 99 Fed.Appx. 25, 27 (6th Cir. 2004)."
> (Appellant's Reply Br. at 1.) Relying on the title of the statute, which
> includes the language "exemption for instruments lodged for record prior
> to July 12, 2006," language not included in the body of the statute, the
> trustee now argues that the "negligence" of creditors who did not comply
> with acknowledgment requirements on mortgages filed prior to July 12,
> 2006 was excused by the statute. The trustee further argues that the statute

Laws Ch. 183 (SB 45) provided "prior to the effective date of this Act," rather than "prior

to July 12, 2006, which was its effective date.  According to the court, the strikeout format

---

> warns that for those mortgages filed after July 12, 2006, such "negligence"
> will not be excused. Thus, the argument goes, the <u>Vance</u> decision will
> permit avoidance of any mortgage with a defective acknowledgment. In
> other words, the trustee asserts that the legislature was granting creditors
> a temporary amnesty only.
>
> The trustee's argument fails. . . . The trustee's interpretation, however,
> urges the Panel to in effect ignore the word "is" in the amended statute.
> The sentence at issue reads, "[h]owever, if . . . a mortgage . . . is not so
> acknowledged, but . . . *is* or has been, prior to the effective date of this Act,
> lodged for record. . . ." Ky. Rev. Stat. Ann. § 382.270 (emphasis added.)
> The trustee's interpretation of this as granting only temporary amnesty
> ignores the word "is."
>
> Moreover, the Kentucky Supreme Court has explained that "'[t]here is a
> strong presumption that statutes operate prospectively and that
> retroactive application of statutes will be approved only if it is absolutely
> certain the legislature intended such a result.'" <u>Faust v. Commonwealth of
> Ky.</u>, 142 S.W.3d 89, 96 (Ky. 2004) (quoting <u>Commonwealth Dept. of
> Agriculture v. Vinson</u>, 30 S.W.3d 162, 168 (2000)). Under the trustee's
> interpretation granting only limited amnesty to those with mortgages
> recorded before the effective date of the Act, the word "is" must be
> ignored and the general principle that statutes operate only prospectively
> would be violated. The trustee's interpretation would permit only limited
> retroactive application of the amendment. However, to properly follow
> the presumption of prospective operation, the statute must be interpreted
> to grant the limited retroactive application the trustee supports and
> prospective application to all mortgages lodged for record. Accordingly,
> the trustee's rights vested on August 11, 2008 when Pelfrey filed his
> petition, and the application of Ky. Rev. Stat. Ann. § 382.270, as amended,
> is, therefore, appropriate. Pursuant to Ky. Rev. Stat. Ann. § 382.270, as
> amended, the mortgage lodged for record provided constructive notice to
> the trustee as a hypothetical bona fide purchaser despite any technical
> defects in the acknowledgment. As a result, the trustee cannot avoid the
> mortgage based on the alleged defects in the acknowledgment . . . .

<u>In re Pelfrey</u>, 419 B.R. at 19-20 (footnotes omitted).

is used to show deletions, while italics are used to show additions.  In re Trujillo, 378 B.R.

at 538.  In Trujillo, the court determined that the Supremacy Clause of the United States

Constitution precludes retroactive application of § 382.270, adding that because the

debtor filed his bankruptcy petition before the effective date of the amended statute,

"[u]nder federal law, a trustee's rights as a bona fide purchaser are fixed as of

commencement of the bankruptcy case."  Id. at 537.

In 2010, § 382.270 was amended again, effective July 15, 2010.  The 2010

amendment made a single change to the 2006 version of the statute:  it deleted the phrase

"prior to the effective date of this Act."

In In re Partin, 517 B.R. 770 (Bankr. D. Ky. 2014), the court interpreted a provision

of Kentucky law, namely Ky. Rev. Stat. § 382.330, the plain language of which required

the date of the underlying obligation in a recordable mortgage.  In the absence of that

information, or any information that would allow calculation of such date, the court

determined that a bankruptcy trustee, acting as a hypothetical lien creditor or bona fide

purchaser, was not charged with constructive notice of a mortgage that was not

recordable pursuant to that Kentucky statute.   Id. at 777-78.  The court recognized,

however, that the Kentucky legislature recently changed the recording statute, namely

Ky. Rev. Stat. § 382.270, distinguishing its application from § 382.330.  It stated:

> Several cases found problems with mortgage acknowledgements in
> recorded documents and determined they did not provide constructive
> notice to a bankruptcy trustee. See, e.g., Rogan v. Am.'s Wholesale Lender
> (In re Vance), 99 Fed.Appx. 25, 2004 WL 771484 (6th Cir. 2004). In 2006, the
> Kentucky legislature amended Ky. Rev. Stat. § 382.270 to provide that an
> improperly acknowledged mortgage that was nonetheless filed of record
> would provide constructive notice of its contents. See FINANCIAL

SERVICES—MORTGAGES, 2006 Kentucky Laws Ch. 183, sec. 16, § 382.270
(SB 45). A similar change might address the issue for the Defendant, but
nothing of that nature is in Ky. Rev. Stat. § 382.330.

In re Partin, 517 B.R. at 777.

In view of the reasoning of the court in Trujillo, there is no need to address the
issue of retroactivity.  The Debtors commenced their Chapter 7 case, after the effective
date of amended § 382.270.  Therefore, even assuming without deciding that the
acknowledgments were defective, because it is undisputed that the Mortgage was lodged
by the Clerk of the County Court of Marshall County on April 11, 2007, any defect in the
acknowledgments do not have the effect of depriving creditors and the Trustee of
constructive notice.  The decisions in Palfrey and Partin unequivocally support this
outcome.  Accordingly, the Mortgage is valid and, even if the Trustee had sought to avoid
it under 11 U.S.C. § 544(a), he could not do so.

### 2. Counts I and II

Having determined the Mortgage is valid, the Court concludes that Mrs. Short's
status as a secured creditor undermines Counts I and II of the Trustee's Complaint.  As a
secured creditor, she is entitled to adequate protection.  In addition, as a secured creditor,
she may be entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1) or (d)(2).
To the extent that the O'Briens paid and continue to pay Mrs. Short, instead of the Trustee,
absent use of funds in which the estate has an interest, the Trustee is neither entitled to
turnover nor damages for unjust enrichment.  The Trustee's rights are those set forth in
his adversary proceeding against the O'Briens for breach of the Contract for Deed.  He is

not entitled to specific monies that belonged to the O'Briens which they voluntarily paid to Mrs. Short.  Neither Mrs. Short's funds nor the O'Briens's funds are property of the bankruptcy estate.

### 3. Count III

The Trustee complains that Mrs. Short, after being advised of numerous violations of the automatic stay "continued to knowingly and willfully violate the automatic stay by collecting payments belonging to the Estate and threatening to dispose of Estate assets."  He seeks damages in an amount to be determined by the Court, as well as punitive damages, under 11 U.S.C. § 362(k).  He did not seek, and has not sought, an order of contempt under 11 U.S.C. § 105(a).

Section 362(k) of the Bankruptcy Code provides:

> Except as provided in paragraph (2), an *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1)(emphasis added).  There is also a split of authority as to whether a trustee is an "individual" for purposes of § 362(k) and its predecessor § 362(h). *Compare* In re Strand, 375 F.3d 854, 860 (9th Cir. 2004)(§ 362(h) applies only to individuals, and not legal entities such as the bankruptcy estate), Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995)("while a trustee can be an 'individual' if the trustee is a natural person (as opposed to, e.g., a corporate entity), the individual's status as trustee precludes any finding that the trustee suffered any damages as an individual, because any harm

18

suffered in the form of costs and attorney's fees is actually incurred by a thing, viz., the

bankruptcy estate, and not by the trustee as a natural person"), *with* <u>In re Howard</u>, 428

B.R. 335, 339-40 (Bankr. W.D. Pa. 2010), *aff'd*, No. 2:10CV962, 2011 WL 578777 (W.D. Pa.

Feb. 9, 2011)(trustee qualified as an "individual" entitled to assert damages for willful

violation of the automatic stay).

The United States Court of Appeals for the First Circuit has not addressed the issue

of a Chapter 7 trustee's status as an *individual* for purposes of § 362(k).  In <u>In re Sayeh</u>, 445

B.R. 19 (Bankr. D. Mass. 2011), however, the court held that a Chapter 11 trustee had no

recourse under 11 U.S.C. § 362(k).  The court stated:

> The Trustee seeks damages for this violation under § 362(k)(1), which
> permits "an individual" injured by a willful violation of the automatic stay
> to obtain damages. 11 U.S.C. § 362(k)(1). The Trustee does not complain of
> injury to herself but of injury to the bankruptcy estate she represents, and a
> bankruptcy estate is an entity but not a natural person. Courts are divided
> on the question of whether a bankruptcy trustee, acting as representative of
> a bankruptcy estate, is an "individual" within the meaning of § 362(k)(1).
> The Trustee, urging the Court to construe individual to include a trustee as
> representative of a bankruptcy estate, cites and relies upon <u>In re Garofalo's
> Finer Foods</u>, 186 B.R. 414, 439 (N.D. Ill. 1995) (trustee is an 'individual' for
> purposes of section 362(h) (now recodified at § 362(k)(1))), <u>In re Mullican</u>,
> 417 B.R. 389, 403–04 (Bankr. E.D. Tex. 2008) (the "trustee in this case is an
> individual representing the estate of individual, consumer debtors and has
> standing to bring an action against the debtors for a willful violation of the
> automatic stay"); and <u>In re Fas Mart Convenience Stores</u>, 318 B.R. 370, 375
> (Bankr. E.D. Va. 2004) (authorizing chapter 11 trustee to pursue § 362(h)
> damages on behalf of estate). This Court is satisfied that the better view, as
> articulated in <u>Havelock v. Taxel (In re Pace)</u>, 67 F.3d 187, 192 (9th Cir. 1995)
> (chapter 7 trustee is not an individual within the meaning of § 362(h)) and
> endorsed in *Collier on Bankruptcy*, at 3 Collier on Bankruptcy, ¶ 362.12[3]
> (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2010), is that
> "individual" does not include a trustee as representative of a bankruptcy
> estate. "Individual," which the Bankruptcy Code does not define, means a
> natural person or human being and does not mean "entity," which, too, is

not a defined term but is used elsewhere in § 362(k). Individual is much
narrower in scope than entity. Had Congress intended for § 362(k)(1) to be
available to entities in general, it could easily have used the term "entity,"
as indeed it did when, in 2005, it moved the subsection in question from §
362(h) to § 362(k)(1) and amended it with a good-faith limitation on
damages in § 362(k)(2) that applies to "an entity."

In re Sayeh, 445 B.R. 19, 26-27 (Bankr. D. Mass. 2011)(footnotes omitted). *See also* Gordon

v. White (In re Morgenstern), __ B.R. __, 2015 WL 9462092 (Bankr. D. N.H. Dec. 24,

2015)("The Court agrees with the cases that apply the more narrow definition of

individual, because a [Chapter 7] trustee represents the bankruptcy estate, not herself as

an individual. Accordingly, the Court finds that the Trustee may not seek relief under §

362(k).").  The Court agrees with the reasoning of the courts in Sayeh and Morgenstern

and predicts that the United States Court of Appeals for the First Circuit would follow

the lead of the Ninth Circuit in Pace.

Notably, the Trustee complains about the payments made by the O'Briens to Mrs.

Short.  While the Trustee has asserted a claim for relief against them for breach of the

Contract for Deed by failing and refusing to make payments to him and unjust

enrichment, the actual funds used by the O'Briens to pay Mrs. Short directly are not

property of the estate.  While the Trustee has a claim against the O'Briens, he does not

have an ownership interest in their monies or any authority to dictate how they spend

their monies.  In view of this Court's determination that Mrs. Short holds a valid

Mortgage on the Property, and the terms of the "General Promissory Agreement"

pursuant to which Mrs. Short and the O'Briens agreed that the O'Briens would make

Mortgage payments directly to Mrs. Short, the Court concludes that the Trustee has no

claim to specific money owned by the O'Briens and they may elect to use their money in any manner they see fit, without affecting his breach of contract claim.

In view of the foregoing, the Court concludes that the Trustee is not entitled to summary judgment. Mrs. Short holds a valid mortgage on the Property; the Trustee lacks standing to seek relief under 11 U.S.C. § 362(k); and the funds paid to Mrs. Short by the O'Briens were not and are not property of the estate.

D. <u>Mrs. Short's Amended Dispositive Motion</u>

As noted above, Mrs. Short appears in this adversary proceeding through her son under a General Power of Attorney. On September 9, 2015, Mrs. Short filed an Amended Dispositive Motion with a further caption: "Motion of Gloria D. Short, Defendant, for Order Authorizing the court to Rule for Dismissal and Return Any and All Interest and or Property Rights in Real Property and Personal Property Known as the Cinderella Motel Back to Her Without Prejudice." At the November 17, 2015 hearing, this Court determined this Motion to be a Cross-Motion for Summary Judgment. The thrust of the Motion is clear to this Court. Mrs. Short seeks relief from the automatic stay for cause. Specifically, Mrs. Short stated, through her attorney in fact, that the Debtors executed the Contract for Deed with the O'Briens without her knowledge and in violation of a provision of the Mortgage. In addition, Mrs. Short has received no mortgage payments from the Debtors since the commencement of their case. The Trustee raised no factual issues in his response to Mrs. Short's Motion.

The Court takes judicial notice of the Chapter 7 Trustee's Motion Authorizing Private Sale of Debtors' Interest in Real Property and Personal Property Known as the Cinderella Motel, as well as the Proof of Claim filed by Mrs. Short in the amount of $100,872 to which no objection has been filed.[4]  Specifically, Mrs. Short indicated that her claim was partially secured in the amount of $98,829 and unsecured in the amount of $2,043.

Pursuant to his Motion, the Trustee proposed to sell the Property to the O'Briens for $30,000 free and clear of Mrs. Short's Mortgage, but subject to other liens, claims and encumbrances, which the Trustee represented totaled $55,000.  In that Motion, the Trustee stated:

> The O'Briens did not make payment to the Trustee, and, in return, asserted claims against the Estate and defenses against the Estate in connection with the Debtors' failure to clear and satisfy the various liens recorded against the Motel with the funds paid for the Down Payment; the Debtors' misdeeds including the failure to cure the claims against the property and the business, and for substantial property defects including systemic mold in the Motel including in the walls and under the flooring, the failure of the roof, the failure of the antiquated HVAC system, the incomplete renovations which were concealed, removal of fixtures from the Motel which were included in the sale—including items such as the wood burning stove, built in microwaves, ceiling fans, all commercial lighting and the heating system in the shed—as well as the undisclosed failure of the drainage and septic system, and multiple code violations. The O'Briens have submitted a market analysis prepared by a real estate broker on their behalf . . . showing the cost of such repairs at approximately $109,000. The fair market value of the Motel is estimated at $94,080.

---

[4] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999), *cert. denied*, 530 U.S. 1230, 120 S.Ct. 2661, 147 L.Ed.2d 275 (2000)("The bankruptcy court appropriately took judicial notice of its own docket.").

Section 362(d) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
>>> (A) the debtor does not have an equity in such property; and
>>> (B) such property is not necessary to an effective reorganization;

11 U.S.C. 362(d)(1) and (d)(2).

In view of the representations made by both Mrs. Short and the Trustee in both this adversary proceeding and in the main case, and subject to the Trustee's right to notice and an opportunity to be heard under Fed. R. Civ. P. 56(f)(2), made applicable to this proceeding by Fed. R. Bankr. P. 7056, the Court finds that Mrs. Short has established a colorable claim to property of the estate and concomitantly for relief from the automatic stay.  *See* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33 (1st Cir. 1994)(stating that proceedings to lift the automatic stay in the bankruptcy court are "summary" in nature, "speedy and necessarily cursory," similar to a preliminary injunction hearing, adding that the bankruptcy court "should seek only to determine whether the party seeking relief has colorable claim to estate property," not "the merits of the underlying substantive claims, defenses, or counterclaims.").  *See also* BB Island Capital, LLC v. East Boston Sav. Bank (In re BB Island Capital, LLC), No. 15-13963-GAO, 2015 WL 8512862 (D. Mass. Dec. 11, 2015), *aff'g*, 540 B.R. 16 (Bankr. D. Mass. 2015).  Mrs. Short established "cause" for relief from stay under § 362(d)(1) due to the Debtors' execution of the Contract for Deed.

23

Moreover, the record establishes that the Debtors lack equity in the Property.  In view of the secured portion of Mrs. Short's proof of claim and the fair market value of the Property reported in the Chapter 7 Trustee's sale motion, ($98,829 versus $94,080), the record establishes the absence of equity and, as the Debtors commenced a Chapter 7 case, the absence of a reorganization in prospect. *See* <u>United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd</u>, 484 U.S. 365 (1988).  These undisputed facts would appear to warrant an order granting Mrs. Short relief from the automatic stay to pursue her state law remedies against the Property.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Trustee's Motion for Summary Judgment and granting Mrs. Short's Cross-Motion for Summary Judgment, which the Court has construed as a request for relief from stay, subject to the entry of a procedural order in the main case with respect to Mrs. Short's Cross-Motion.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  January 22, 2016